**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRIS NIKOLOVSKI and CHRIS NIKOLOVSKI D.D.S, P.C., a Illinois corporation, individually and as the representatives of a class of similarly situated persons and entities, | |
| Plaintiffs, | Civil Action No. 1:18-cv-3085 |
| v. | |
| PRIME CAPITAL SOURCE, INC. and SCOTT DAVIDSON, | **JURY DEMANDED** |
| Defendant. | |

**CLASS ACTION COMPLAINT**

NOW COME the Plaintiffs, CHRIS NIKOLOVSKI and CHRIS NIKOLOVSKI D.D.S, P.C. ("Plaintiffs"), by and through their attorney, James C. Vlahakis, and bring this putative action against Defendants PRIME CAPITAL SOURCE, INC. ("Prime") and SCOTT DAVIDSON ("Davidson") (at times "Defendants"):

**INTRODUCTION**

1.     On December 6, 2017, Prime and/or Davidson sent an "unsolicited advertisement" facsimile to (630)986-5984.

2.     (630)986-5984 is a telephone number that is used by a stand-alone facsimile machine owned and operated by Plaintiffs.

3.     A true and accurate copy of the December 6, 2017, facsimile transmission is attached as Exhibit A (hereafter the "Facsimile").

4.     Prime and/or Davidson's transmission of the Facsimile violated the Telephone Consumer Protection Act of 1991 ("TCPA"), as amended by the Junk Fax Prevention Act of 2005, 47 USC §227 ("JFPA" or the "Act")

5.     The JFPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement" 47 U.S.C. §227(b)(1)(C).

6.     The JFPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."47 U.S.C. §227(a)(5).

7.     The JFPA prohibits a person or entity from transmitting facsimile advertisements without the prior express invitation or permission or the person or business entity that receives the facsimile advertisement.

8.     The Facsimile promoted the "commercial availability" of "goods" and/or "services" without Plaintiffs' "prior express invitation or permission."

9.     In 2003, the FCC explained that Congress enacted the TCPA in 1991 to combat unsolicited facsimile transmissions:

> Congress also took account of the "interference, interruptions, and expense" resulting from junk faxes, emphasizing in the same Report that "[i]n addition to the costs associated with the fax advertisements, when a facsimile machine is receiving a fax, it may require several minutes or more to process and print the advertisement. During that time, the fax machine is unable to process actual business communications."

*See,* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 18 FCC Rcd 14014, 14131-32 (2003) (the "2003 TCPA Report and Order") at para. 201 (quoting H.R. REP. NO. 102-317 at 25 (1991)).[1]

10.     FCC has declared that the facsimiles transmissions include transmissions of facsimiles to more than "conventional stand-alone telephone facsimile machine."

---

[1] The 2003 TCPA Report and Order can be found at
https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

11.     According to the FCC's 2003 TCPA Report and Order:

> 200.  We conclude that faxes sent to personal computers equipped with, or attached to, modems and to computerized fax servers are subject to the TCPA's prohibition on unsolicited faxes . . . .  The record confirms that a conventional stand-alone telephone facsimile machine is just one device used for this purpose; that developing technologies permit one to send and receive facsimile messages in a myriad of ways. Today, a modem attached to a personal computer allows one to transmit and receive electronic documents as faxes. "Fax servers" enable multiple desktops to send and receive faxes from the same or shared telephony lines.

> 201.  The TCPA's definition of "telephone facsimile machine" broadly applies to any equipment that has the capacity to send or receive text or images. The purpose of the requirement that a "telephone facsimile machine" have the "capacity to transcribe text or images" is to ensure that the prohibition on unsolicited faxing not be circumvented. Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional stand-alone facsimile machines.

*See,* FCC's 2003 TCPA Report and Order at paras. 200, 201.

12.     Pursuant to the TCPA, the person or entity transmitting an advertising facsimile bears the burden of proof as to whether it had the permission of the recipient to transmit the facsimile.  47 U.S.C. §227(b)(1)(C)**.**

13.     On April 6, 2016, the Federal Communication Commission ("FCC") issued a Report and Order and Third Order on Reconsideration (the "2006 FCC Order"). *See,*

https://apps.fcc.gov/edocs_public/attachmatch/FCC-06-42A1.pdf

14.     Paragraphs 12, 14 and 15 of the 2006 FCC Order explained why the burden on establishing and EBR falls on the person or entity transmitting the facsimile:

> 12.  To ensure that the EBR exemption is not exploited, we conclude that an entity that sends a facsimile advertisement on the basis of an EBR should be responsible for demonstrating the existence of the EBR. The entity sending the fax is in the best position to have records kept in the usual course of business showing an EBR, such as purchase agreements, sales slips, applications and inquiry records.  We emphasize that we are not requiring any specific records be kept by facsimile senders. Should a question arise,

however, as to the validity of an EBR, the burden will be on the sender to show that it has a valid EBR with the recipient.

* * *

14. In the event a recipient complains that its facsimile number was not provided to the sender, the burden rests with the sender to demonstrate that the number was communicated in the context of the EBR.

15. . . . We also reiterate that senders of facsimile advertisements must have an EBR with the recipient in order to send the advertisement to the recipient's facsimile number. The fact that the facsimile number was made available in a directory, advertisement or website does not alone entitle a person to send a facsimile advertisement to that number.

15. All facsimiles sent by a person or business must contain a notice informing the person of business receiving the facsimile about (a) the recipient's right to avoid future facsimiles and (b) instructions on how to tell a sender that the recipient does not want to receive any more facsimile advertisements.

16. The JFPA prohibits the transmission of unsolicited advertising facsimiles to traditional, stand-alone facsimiles machines as well as computerized facsimile delivery systems.

17. The JFPA authorizes persons and business entities that receive unsolicited facsimiles to sue the sender of the facsimile in federal court to recover monetary damages.

18. The JFPA authorizes a plaintiff to receive a minimum of statutory damages of $500 from the person or entity for each unlawful facsimile that person or entity sends to a plaintiff.

19. The JFPA also authorizes a person to receive up to $1,500 in statutory damages from the person or entity that sent the facsimiles if a court or jury determines that the person or entity willingly or knowingly committed a violation of the JFPA.

20.     On information and belief, in the four years prior to the filing of this civil action, Defendant sent over three dozen unsolicited facsimiles similar in form to the Facsimile sent to Plaintiffs on November 21, 2017.

### PARTIES, JURISDICTION AND VENUE

21.     Plaintiff CHRIS NIKOLOVSKI is an Illinois resident.

22.     Plaintiff CHRIS NIKOLOVSKI D.D.S, P.C., is an Illinois corporation.

23.     (630)986-5984 is a telephone number that Plaintiffs use to receive facsimile transmissions.

24.     Plaintiffs do not want to receive unsolicited facsimile advertisements at (630) 986-5984.

25.     Plaintiffs have not and do not include (630)986-5984 on its Internet site.

26.     The above telephone number is linked to hardware and software that receives, stores and prints facsimiles.

27.     On information and belief, Defendant Prime is a California corporation.

28.     On information and belief, Defendant Davidson is a California resident.

29.     This Court has subject matter jurisdiction under 28 U.S.C. §1331 and 47 U.S.C. §227.

30.     This court has personal jurisdiction over Defendants because they have transacted business within this judicial district, by virtue of them transmitting unsolicited "junk" facsimiles to this judicial district, and committing tortious acts within this judicial district by and through the transmission of the subject facsimiles.

31.     Venue is proper because the subject facsimile was received in this judicial district.

32.     Supplemental jurisdiction exists for Plaintiff's state law claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*

## DEFENDANT VIOLATED THE JFPA

33.     The Facsimile advertises, describes and promotes the following:

> Get cash now! We offer you traditional working capital options. 5 year term loan with monthly payment, AR line & LOC to name a few.  You are prequalified based on your D&B score & profile. Call Now! Scott Davidson (858) 427-1250, Ask about our Prime + Equip Loan!

34.     The Facsimile describes the commercial availability or quality of products, goods and services offered to Plaintiffs by Defendants.

35.     Plaintiffs did not give prior express invitation or permission to either Defendant to send the Facsimile.

36.     On information and belief, Plaintiffs did not have a prior established business relationship with either Defendant.

37.     One or both of the Defendants or someone acting on their behalf composed and the advertising message depicted on the Facsimile.

38.     Defendant Davidson's name is on the Facsimile.

39.     Plausibly, Defendant Davidson placed or authorized someone to place his name on the Facsimile.

40.     Upon information and belief, if someone else composed the advertising message depicted on the Facsimile, Defendant Davidson knew of and approved the message.

41.     Upon information and belief, if someone else composed the advertising message depicted on the Facsimile, Defendant Primes knew of and approved the message.

42.     One or both of the Defendant or someone acting on their behalf caused the Facsimile to be transmitted to Plaintiffs' facsimile number.

43.     Upon information and belief, one or both of the Defendants or someone acting on their behalf purchased Plaintiffs' facsimile number from a third-party for a fee.

44.     Upon information and belief, one or both of the Defendants or someone acting on their behalf purchased over three dozen facsimile numbers from a third-party for a fee.

45.     On information and belief, one or both of the Defendants receives revenues from the sale of the products, goods and services advertised on Exhibit A.

46.     On information and belief, one or both of the Defendants profits and benefits from the sale of the products, goods and services advertised on Exhibit A.

47.     As a result of the conduct set forth above, Defendant Davidson is vicariously liable and responsible for the transmission of the Facsimile.

48.     Alternatively, as a result of the conduct set forth above, Defendant Prime is vicariously liable and responsible for the transmission of the Facsimile.

### DEFENDANTS' CONDUCT HARMED PLAINTIFFS AND CLASS MEMBERS

49.     According to the FCC's 2003 TCPA Report and Order:

> facsimile messages sent to a computer or fax server may shift the advertising costs of paper and toner to the recipient, if they are printed. They may also tie up lines and printers so that the recipients' requested faxes are not timely received.741 Such faxes may increase labor costs for businesses, whose employees must monitor faxes to determine which ones are junk faxes and which are related to their company's business.

*Id.* at para. 202.

50.     Unsolicited facsimiles prevent telefax machines from receiving authorized facsimiles, prevent their use for authorized outgoing facsimiles, cause undue wear and tear on the recipients' telefax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited advertising message.

51.     Defendant Prime and/or Defendant Davidson's transmission of the unsolicited Facsimile to Plaintiffs telefax machine caused Plaintiffs to suffer concrete and actual harm.

52.     Plaintiffs, as recipients of the unsolicited Facsimile, lost the use of their telefax machine, paper, and ink toner for a period of time.

53.     Receiving, viewing and printing the unsolicited Facsimile wasted the Plaintiffs' valuable time that would have been spent on something else.
Contacting senders of unsolicited facsimiles to tell them to stop sending unsolicited facsimiles wastes the time of the recipients.

54.     There is no reasonable means for Plaintiffs (or any other class member) to avoid receiving unauthorized facsimiles.

55.     That is because telefax machines are left "on" and ready to receive the type of consented to business communications that their owners desire to receive

56.     The Facsimile interrupted and disturbed Plaintiffs' right of privacy and right to not be disturbed with unsolicited advertising facsimiles.

57.     The transmission of the Facsimile to Plaintiffs' facsimile number tied up Plaintiffs' telephone line, caused Plaintiffs' to use data, resulted in unnecessary use of computer storage space and unauthorized usage of their facsimile machine's software and hardware.

## ADDITIONAL ALLEGATIONS

58.     This civil action is based on the same legal theory, namely violations of the JFPA.

59.     Class members were harmed in the same ways as set forth above.

60.     This civil action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner.

61.     Unsolicited facsimiles are generally not transmitted on a one-by-one basis.

62.     Upon information and belief, because unsolicited facsimiles are generally sent out *en mass*, it is plausible to allege that Defendant Prime has sent, and continues to send, dozens of similar unsolicited advertisements via facsimile transmission in violation of the JFPA, to aggrieved persons.

63.     Upon information and belief, because unsolicited facsimiles are generally sent out *en mass*, it is plausible to allege that Defendant Davidson has sent, and continues to send, dozens of similar unsolicited advertisements via facsimile transmission in violation of the JFPA, to aggrieved persons.

64.     On information and belief, Defendant Prime faxed the same Facsimile and other similar  unsolicited facsimiles to at least three dozen other recipients or sent the same or similar advertisements by fax with the required opt-out language but without first receiving the recipients' express invitation or permission and without having an established business relationship as defined by the TCPA and its regulations.

65.     On information and belief, Defendant Davidson faxed the same Facsimile and other similar  unsolicited facsimiles to at least three dozen other recipients or sent the same or similar advertisements by fax with the required opt-out language but without first receiving the recipients' express invitation or permission and without having an established business relationship as defined by the TCPA and its regulations.

66.     On behalf of itself and all others similarly situated, Plaintiffs bring this civil action to certify a class of persons and entities were set facsimile advertisements without their prior express invitation or permission.

67.     This action seeks relief expressly authorized by the JFPA: (a) injunctive relief enjoining Defendant Davidson and Defendant Prime, as well as its employees, agents, representatives, contractors, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the JFPA; and (b) an award of statutory damages in the minimum amount of $500 for each violation of the JFPA, and to have such damages trebled, as provided by §227(b)(3) of the Act.

## COUNT I – VIOLATION OF THE JFPA vs. DEFENDANT PRIME
## UNSOLICITED FACSIMILE TRANSMISSION

68.     Plaintiffs incorporate the above paragraphs as if fully set forth.

69.     Defendant Prime sent the Facsimile advertisement on or about November 21, 2017, via facsimile transmission from a telephone facsimile machine, computer, or other device to the telephone lines and facsimile machines of Plaintiffs and members of the Class.

70.     The Facsimile constituted an advertisement under the Act.

71.     To the best of Plaintiffs' knowledge, information and belief, Defendant Prime cannot assert any prior express invitation or permission to transmit the facsimile to Plaintiffs.

72.      To the best of Plaintiffs' knowledge, information and belief, Defendant Prime cannot assert any prior express invitation or permission to transmit similar facsimiles to putative class members.

73.     To the best of Plaintiffs' knowledge, information and belief, Defendant Prime does not have and did not have an established business relationship with Plaintiffs, and accordingly, Defendant Prime did not have permission to transmit the Facsimile to Plaintiffs.

74.     To the best of Plaintiffs' knowledge, information and belief, Defendant Prime does not have and did not have an established business relationship with putative

class members, and accordingly, Defendant Prime did not have permission to transmit facsimiles to putative class members similar to the Facsimile.

75.     On information and belief, Defendant Prime transmitted dozens of facsimiles that looked similar to the Facsimile to hundreds of persons or entities without prior express invitation or permission of the recipients.

76.     By virtue, thereof, violated the JFPA and the regulations promulgated thereunder by sending the Fax via facsimile transmission to Plaintiffs and members of the Class.

77.     Plaintiffs seek to certify a class which includes this facsimile and all others sent during the four years prior to the filing of this case through the present.

78.     On information and belief, during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendant Prime has sent similar facsimile transmissions from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Class other facsimiles where the transmitted facsimiles constitute advertisements under the JFPA where the facsimiles were sent to persons or entities without their prior express invitation or permission.

79.     Discovery may demonstrate that Defendant Prime is continuing to send unsolicited advertisements via facsimile transmission in violation of the JFPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

80.     The JFPA provides a private right of action to bring this action on behalf of Plaintiffs and the Class to redress Defendant Prime's violations of the Act, and provides for statutory damages. 47 U.S.C. §227(b)(3).

81.     The JFPA is a strict liability statute, thus Defendant Prime is liable to Plaintiffs and the class members even if their or its actions were only negligent.

82.    Defendant Prime knew or should have known that it was violating the JFPA because Plaintiffs and the class members had not given prior express invitation or permission for Defendant Prime to transmit the Facsimile or other facsimile advertisements about Defendant's products, goods or services;

83.    Defendant Prime knew or should have known that it was violating the JFPA because Plaintiffs and the other class members did not have an established business relationship which may have allowed Defendant Prime to transmit the Facsimile or other facsimile advertisements about Defendant Prime's products, goods or services.

84.    The unlawful transmission of the Facsimile to Plaintiffs and the unlawful transmission other similar unsolicited facsimiles to class members caused damages to Plaintiffs and the class members.

85.    The unlawful transmission of the Facsimile to Plaintiffs and the unlawful transmission other similar unsolicited facsimiles to class members caused Plaintiffs and the recipients to use paper and toner when they printed the subject facsimiles.

86.    The unlawful transmission of the Facsimile to Plaintiffs and the unlawful transmission other similar unsolicited facsimiles to class members used and/or depleted their telephone lines, data lines, computer storage related to the operation of their telefax machine.

87.    The unlawful transmission of the Facsimile to Plaintiffs and the unlawful transmission other similar unsolicited facsimiles to class members caused Plaintiffs and the class members and/or their employees to waste time receiving, reviewing and routing the unsolicited and unlawful facsimiles.

88.    That time otherwise would have been spent on the Plaintiffs' and the other class members' business activities.

89. The unlawful transmission of the Facsimile to Plaintiffs and the unlawful transmission other similar unsolicited facsimiles to class members interrupted the Plaintiffs' and other class members' privacy interests in being left alone and free from unsolicited "junk" facsimiles.

90. The JFPA also provides for injunctive relief. *Id.*

91. Injunctive relief against Defendant is appropriate to protect persons and entities from being harmed by future unlawful facsimile transmission by Defendant Prime.

WHEREFORE, Plaintiffs, CHRIS NIKOLOVSKI and CHRIS NIKOLOVSKI D.D.S, P.C., individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendant PRIME CAPITAL SOURCE, INC. as follows:

a. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint one or both of the Plaintiffs as the representatives of the class, and appoint their counsel as counsel for the class;

b. That the Court award actual monetary loss from the above violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater;

c. That the Court award treble damages of $1,500.00 if the violations are deemed "willful or knowing";

d. That Court enjoin Defendant(s) from additional violations of the TCPA; and;

e. That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

**COUNT II – VIOLATION OF THE JFPA vs. DEFENDANT DAVIDSON UNSOLICITED FACSIMILE TRANSMISSION**

92. Plaintiffs incorporate the above paragraphs as if fully set forth.

93. Defendant Davidson sent the Facsimile advertisement on or about November 21, 2017, via facsimile transmission from a telephone facsimile machine,

computer, or other device to the telephone lines and facsimile machines of Plaintiffs and members of the Class.

94.    The Facsimile constituted an advertisement under the Act.

95.    To the best of Plaintiffs' knowledge, information and belief, Defendant Davidson cannot assert any prior express invitation or permission to transmit the facsimile to Plaintiffs.

96.     To the best of Plaintiffs' knowledge, information and belief, Defendant Davidson cannot assert any prior express invitation or permission to transmit similar facsimiles to putative class members.

97.    To the best of Plaintiffs' knowledge, information and belief, Defendant Davidson does not have and did not have an established business relationship with Plaintiffs, and accordingly, Defendant Davidson did not have permission to transmit the Facsimile to Plaintiffs.

98.    To the best of Plaintiffs' knowledge, information and belief, Defendant Davidson does not have and did not have an established business relationship with putative class members, and accordingly, Defendant Davidson did not have permission to transmit facsimiles to putative class members similar to the Facsimile.

99.    On information and belief, Defendant Davidson transmitted dozens of facsimiles that looked similar to the Facsimile to hundreds of persons or entities without prior express invitation or permission of the recipients.

100.   By virtue, thereof, violated the JFPA and the regulations promulgated thereunder by sending the Fax via facsimile transmission to Plaintiffs and members of the Class.

101.   Plaintiffs seek to certify a class which includes this facsimile and all others sent during the four years prior to the filing of this case through the present.

102.    On information and belief, during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendant Davidson has sent similar facsimile transmissions from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Class other facsimiles where the transmitted facsimiles constitute advertisements under the JFPA where the facsimiles were sent to persons or entities without their prior express invitation or permission.

103.    Discovery may demonstrate that Defendant Davidson is continuing to send unsolicited advertisements via facsimile transmission in violation of the JFPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

104.    The JFPA provides a private right of action to bring this action on behalf of Plaintiffs and the Class to redress Defendant Davidson's violations of the Act, and provides for statutory damages. 47 U.S.C. §227(b)(3).

105.    The JFPA is a strict liability statute, thus Defendant Davidson is liable to Plaintiffs and the class members even if their or its actions were only negligent.

106.    Defendant Davidson knew or should have known that it was violating the JFPA because Plaintiffs and the class members had not given prior express invitation or permission for Defendant Davidson to transmit the Facsimile or other facsimile advertisements about Defendant's products, goods or services;

107.    Defendant Davidson knew or should have known that it was violating the JFPA because Plaintiffs and the other class members did not have an established business relationship which may have allowed Defendant Davidson to transmit the Facsimile or other facsimile advertisements about Defendant Davidson's products, goods or services.

108.    The unlawful transmission of the Facsimile to Plaintiffs and the unlawful transmission other similar unsolicited facsimiles to class members caused damages to Plaintiffs and the class members.

109.    The unlawful transmission of the Facsimile to Plaintiffs and the unlawful transmission other similar unsolicited facsimiles to class members caused Plaintiffs and the recipients to use paper and toner when they printed the subject facsimiles.

110.    The unlawful transmission of the Facsimile to Plaintiffs and the unlawful transmission other similar unsolicited facsimiles to class members used and/or depleted their telephone lines, data lines, computer storage related to the operation of their telefax machine.

111.    The unlawful transmission of the Facsimile to Plaintiffs and the unlawful transmission other similar unsolicited facsimiles to class members caused Plaintiffs and the class members and/or their employees to waste time receiving, reviewing and routing the unsolicited and unlawful facsimiles.

112.    That time otherwise would have been spent on the Plaintiffs' and the other class members' business activities.

113.    The unlawful transmission of the Facsimile to Plaintiffs and the unlawful transmission other similar unsolicited facsimiles to class members interrupted the Plaintiffs' and other class members' privacy interests in being left alone and free from unsolicited "junk" facsimiles.

114.    The JFPA also provides for injunctive relief. *Id.*

115.    Injunctive relief against Defendant Davidson is appropriate to protect persons and entities from being harmed by future unlawful facsimile transmission by Defendant Davidson.

WHEREFORE, Plaintiffs, CHRIS NIKOLOVSKI and CHRIS NIKOLOVSKI D.D.S,

P.C., individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendant SCOTT DAVIDSON as follows:

    a. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint one or both of the Plaintiffs as the representatives of the class, and appoint their counsel as counsel for the class;

    b. That the Court award actual monetary loss from the above violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater;

    c. That the Court award treble damages of $1,500.00 if the violations are deemed "willful or knowing";

    d. That Court enjoin Defendant(s) from additional violations of the TCPA; and;

    e. That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

## COUNT III – vs. PRIME AND DAVIDSON

## FOR TRANSMITTING FACSIMILES WITH NON-COMPLIANT OPT-OUT LANGUAGE

116. Plaintiffs incorporate the above paragraphs as if fully set forth in this Count.

117. Section 227(b)(2)(D)(i) of JFPA requires that senders of unsolicited facsimile advertisements place a clear and conspicuous opt-out notice on the first page of a facsimile transmission (hereinafter collectively the "Opt-Out Notice Requirements").

118. Section 227(b)(2)(D)(ii) of the JFPA requires that senders of unsolicited facsimile advertisements must inform the recipient that he/she/it "may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the [FCC], with such a request . . . is unlawful."

119.    A statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements knowing that he or she has the legal right to request an opt-out helps inform a recipient that he/she/it has a right to notify the sender that he/she/it wants to opt-out of receiving future facsimiles.

120.    Section 227(b)(2)(D)(iv)(I) of the JFPA requires that senders of unsolicited facsimile advertisements must provide "a cost-free mechanism for a recipient to transmit a request" to opt-out of future unsolicited facsimiles.

121.    The Facsimile did not display a proper Opt-Out Notice as required by Section 227(b)(2)(D)(ii) of the JFPA and 47 C.F.R. §64.1200.

122.    As set forth above, each Defendant was either personally responsible for the transmission of the Facsimile or is vicariously liable for transmission of the Facsimile.

123.    Defendants did not comply with the JFPA when it transmitted the Facsimile to Plaintiff because the Facsimile failed to comply with the JFPA's Opt-Out Notice Requirements.

124.    Defendants did not comply with the JFPA when it transmitted the Facsimile to putative class members, because any transmission of facsimile to putative class members most likely and plausibly failed to comply with the JFPA's Opt-Out Notice Requirements.

125.    On information and belief, Defendants transmitted dozens of facsimiles that looked similar to the Facsimile to hundreds of persons or entities where the facsimiles failed to contain the required Opt-Out language.

126.    Accordingly, Defendants violated the JFPA and the regulations promulgated thereunder by sending the Fax via facsimile transmission to Plaintiffs and members of the Class.

127.    Plaintiffs seek to certify a class which includes this Facsimile and all others sent during the four years prior to the filing of this case through the present where the facsimiles failed to comply with the Opt-Out Requirements.

128.    On information and belief, during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendants have sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of the Class other facsimiles that constitute advertisements under the JFPA that were transmitted to persons or entities without their prior express invitation or permission, with similarly non-compliant opt-out language.

WHEREFORE, Plaintiffs, CHRIS NIKOLOVSKI and CHRIS NIKOLOVSKI D.D.S, P.C., individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendants PRIME CAPITAL SOURCE, INC. and SCOTT DAVIDSON as follows.

a.  That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint one or both of the Plaintiffs as the representatives of the class, and appoint their counsel as counsel for the class;

b.  That the Court award actual monetary loss from the above violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater;

c.  That the Court award treble damages of $1,500.00 if the violations are deemed "willful or knowing";

d.  That Court enjoin Defendant(s) from additional violations of the TCPA; and;

e.  That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

## COUNT IV

### VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT

129.    Plaintiffs incorporate the above paragraphs as if fully set forth in this Count.

130.    As alleged above, Defendant is engaged in commerce in the State of Illinois with regard to Plaintiff.

131.    Defendant violated Illinois Consumer Fraud Act, 815 ILCS 505/1, *et seq.*, by transmitting the Facsimiles to Plaintiff and other Class Members.

132.    The Facsimiles are "advertisement[s]" as the term is defined by Section 505/1(a) of the ICFA.

133.    Alternatively, the Facsimile is as "merchandise" as the term is defined by Section 505/1(b) of the ICFA.

134.    Plaintiffs are each a "person" as this term is defined by Section 505/1(c) of the ICFA.

135.    Defendant treated Plaintiffs as "consumer" as this terms is defined by Section 505/1(e) of the ICFA because Defendant sought to solicit payment from Plaintiffs for what was being advertised on the Facsimile.

136.    The Facsimile was "'advertisement[s]" as this term is defined by Section 505/1(a) of the ICFA.

137.    According to Section 505/1(a) of the ICFA:

> The term "advertisement" includes the attempt by publication, dissemination, solicitation or circulation to induce directly or indirectly any person to enter into any obligation or acquire any title or interest in any merchandise and includes every work device to disguise any form of business solicitation by using such terms as "renewal", "invoice", "bill", "statement", or "reminder", to create an impression of existing obligation when there is none, or other language to mislead any person in relation to any sought after commercial transaction.

138.   The Facsimile was a form of a "sale" as this term is defined by Section 505/1(d) of the ICFA.

139.   According to Section 505/1(d) of the ICFA, "[t]he term "sale" includes any sale, offer for sale, or attempt to sell any merchandise for cash or on credit."

140.   The Facsimiles were a form "trade" and/or "commerce" as these terms are defined by Section 505/1(f) of the ICFA.

141.   According to Section 505/1(f) of the ICFA:

The terms "trade" and "commerce" mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State.

142.   The ICFA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices."

143.   In relevant part, Section 5050/2 states as follows:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" . . . in the conduct of any trade or commerce. . . .

144.   As alleged above and detailed below, Defendant violated Section 505/10a(a) of the IFCA requires a plaintiff to sustain damages.

145.   As set forth above, Plaintiffs have adequately alleged plausible damages from their receipt of the Facsimile.

146.   Plaintiffs have alleged that it did consent to receiving the Facsimile, and have alleged that unsolicited facsimile waste toner and paper, wear down fax machines, and consume employee time.

147.    On a motion to dismiss, a court should not presume that this injury is so minor that the maxim *de minimis non curat lex* applies.

148.    Such a presumption would be inconsistent with a court's duty to draw reasonable inferences of fact (in this case, the size of the damages) in a plaintiffs' favor.

149.    Furthermore, characterizing the harm as *de minimis* at the pleading stage would conflict with the ICFA's remedial purpose, because it would allow defendants to freely engage in unfair practices so long as the effects were spread thinly over a large population of victims. *See, e.g., Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 41-42, n. 9 (1st Cir. 2003) (noting that consumer suits are especially well-suited for class treatment, because the vindication of consumer rights regularly involves class actions on behalf of members "whose individual claims would be too small to warrant litigation").

150.    Plaintiffs have also alleged that Defendant intentionally transmitted the Facsimile, which constitutes an unfair or deceptive act or practice "in the course of conduct involving trade or commerce".

151.    In determining whether a practice is unfair, Illinois courts will consider "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960-61 (2002)

152.    A practice is unfair if it meets one of these criteria to a substantial extent, or if it meets all three to a lesser degree. *Id.* at 691.

153.    Transmitting unsolicited facsimiles offends public policy.  Not only is the transmission of unsolicited facsimiles unlawful under the TCPA, it is a misdemeanor criminal offense under Illinois law.  *See* 720 ILCS 5/26-3.

154.     Transmitting unsolicited facsimiles is oppressive because unsolicited facsimiles impose a lack of meaningful choice and/or an unreasonable burden upon recipients. *Robinson*, 775 N.E.2d at 962.

155.     A practice of sending unsolicited faxes does deprive consumers of choice, given that they cannot avoid such faxes without turning off their fax machines.

156.     Costs that are imposed on an unwilling consumer can constitute a substantial injury.

157.     Small individual harms can be considered substantial, if they are part of a practice that, in the aggregate, causes substantial losses to the public as a whole. *See, e.g., People ex rel. Hartigan v. Stianos*, 475 N.E.2d 1024, 1029 (2d Dist. 1985).

158.     In *Stianos*, a practice of overcharging consumers for sales tax caused but a few cents in losses to any individual customer. Id. The court nevertheless found that such losses, when considered across all of the retailers' customers, could be substantial, and that this fact supported a finding that the practice was unfair under the ICFA. Id.

159.     As alleged above, Plaintiffs allege that unsolicited faxes impose costs on unwilling consumers, by wasting paper and toner, wearing down fax machines, and consuming employee time.

160.     Unsolicited facsimiles like the Facsimile received by Plaintiffs are generally not sent out on a one-by-one basis.

161.     Rather, unsolicited facsimiles like the Facsimile received by Plaintiffs are generally transmitted en mass or "blasted" to multiple recipients at once.

162.     On information and belief, Defendant has transmitted at least three dozen similar unsolicited facsimiles to people and/or business entities in Illinois.

163. Defendant's practice of sending unsolicited facsimiles has violated Illinois public policy, deprived persons and businesses of the choice to not receive advertising faxes, and caused a significant amount of harm to consumers, taken in the aggregate.

164. Accordingly, the Complaint plausibly suggests that the aggregate harm caused by this practice would constitute substantial harm and thus unfair within the meaning of the ICFA.

165. For these reasons Plaintiffs seek to certify a class of:

> (a) all Illinois residents; (b) who received advertising facsimiles from Defendant(s) in the past three years; (c) where Defendants did not have consent to transmit the facsimiles to the recipients; and/or Defendants cannot demonstrate that they had an established business relationship with the recipients before transmitting the facsimiles to the recipients.

166. Excluded from the Class are Defendant, its predecessors, affiliates, and officers, employees, contractors and agents, this Honorable Court and its staff members.

WHEREFORE, Plaintiffs, CHRIS NIKOLOVSKI and CHRIS NIKOLOVSKI D.D.S, P.C., individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendant THE TONER DOCTOR as follows:

a. That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint one or both of the Plaintiffs as the representatives of the class, and appoint their counsel as counsel for the class;

b. That the Court award actual monetary loss from the above violations;

c. That the Court award punitive damages;

d. That the Court award statutory attorney's fees and costs pursuant to ILCS 505/10a(c);

e. That Court enjoin Defendant(s) from additional violations of the icfa and;

f. That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

## **ADDITIONAL CLASS ACTION ALLEGATIONS**

167.    Plaintiffs incorporate the above paragraphs as if fully set forth in this Section.

168.    In accordance with FRCP 23(b)(1), (b)(2) and (b)(3), with regard to Count I, Plaintiffs bring this class action pursuant to the JFPA, on behalf of the following class of persons:

> All persons in the United States who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendant(s), (3) from whom Defendant did not obtain "prior express invitation or permission" to send fax advertisements, or (4) with whom Defendant did not have an established business relationship.

169.    Plaintiffs intend the above class to include everyone who received the Facsimile sent to Plaintiffs, everyone who received similar variations of the facsimile and everyone who received unsolicited advertising based facsimiles where Defendants cannot satisfy their burden of proof on the whether Defendants had consent of the recipients of each facsimile.

170.    In accordance with Fed. R. Civ. P. 23(b)(1), (b)(2) and (b)(3), with regard to Count II, Plaintiffs bring this class action pursuant to the JFPA, on behalf of the following class of persons:

> All persons in the United States who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendants, (3) where the fax advertisements did not include an opt-out notice compliant with 47 C.F.R. §64.1200(a)(4)(iii).

171.    Plaintiffs intend the above class to include everyone who received the Facsimile sent to Plaintiffs, everyone who received similar variations of the facsimile

and everyone who received unsolicited advertising based facsimiles where the facsimiles failed to include the required Opt-Out Notice.

172.   Plaintiffs reserve the right to amend these class definitions upon completion of class certification discovery.

173.   Excluded from the Class are Defendant(s), its/their predecessors, affiliates, officers, employees, contractors and agents, this Honorable Court and its staff members.

174.   <u>Class Size (FRCP 23(a)(1))</u>: Plaintiffs are informed and believe, and upon such information and belief avers, that the number of persons and entities of the Class is numerous and joinder of all members is impracticable.

175.   Plaintiffs are informed and believes, and upon such information and belief aver, that the number of class members is at least three dozen.

176.   <u>Commonality (FRCP 23 (a) (2))</u>: Common questions of law and fact apply to the claims of all class members.

177.   Common material questions of fact and law include, but are not limited to, the following:

        a.  Whether Defendant sent unsolicited fax advertisements;

        b. Whether the facsimiles advertised the commercial availability or quality of property, goods, or services;

        c. The manner and method Defendants used to compile or obtain the list of fax numbers to which they sent Exhibit A, other unsolicited faxed advertisements or other advertisements:

        d. Whether Defendants faxed advertisements without first obtaining the recipient's prior invitation or permission;

        e. Whether the Facsimile and other facsimiles had compliant Opt-Out Notice language;

        f. Whether Defendant sent the faxed advertisements knowingly;

        g. Whether Defendants violated the provisions of 47 U.S.C. §227 and the

regulations promulgated thereunder;

h. Whether Defendants should be enjoined from faxing advertisements in the future;

i. Whether Plaintiffs and the other members of the class are entitled to statutory damages; and

j. Whether the Court should award treble damages.

178. <u>Typicality (FRCP 23 (a) (3))</u>: The Plaintiffs' claims are typical of the claims of all class members.

179. Plaintiffs received the same or similar facsimiles as the facsimiles sent by or on behalf of Defendant(s) advertising products, goods and services of Defendant(s) during the Class Period.

180. Plaintiffs are making the same claims and seeking the same relief for itself and all class members based upon the same federal statute. Defendant(s) has acted in the same or in a similar manner with respect to Plaintiffs and all the class members by sending Plaintiffs and each member of the class the same or similar facsimiles or facsimiles which were sent without prior express invitation or permission.

181. <u>Fair and Adequate Representation (FRCP 23(a)(4))</u>: Plaintiffs will fairly and adequately represent and protect the interests of the class.

182. Plaintiffs are interested in this civil action, have no conflicts, and have retained experienced class counsel to represent the class.

183. Plaintiffs' under signed counsel, James C. Vlahakis, is an experienced consumer class action litigator who has defended and/or prosecuted over a hundred consumer-based claims since 1998.

184. Mr. Vlahakis, in conjunction with class counsel, has obtained approval of multi-million-dollar TCPA based class action settlements.

185.    Mr. Vlahakis has successfully defended TCPA based class actions and has decertified a class action.

186.    Mr. Vlahakis has also obtained declaratory relief before the Federal Communication Commission relative to an alleged TCPA junk facsimile based cause of action.

187.    <u>Need for Consistent Standards and Practical Effect of Adjudication (FRCP 23(b)(1))</u>: Class certification is appropriate because the prosecution of individual actions by class members would: (a) create the risk of inconsistent adjudications that could establish incompatible standards of conduct for Defendant(s), and/or (b) as a practical matter, adjudication of the Plaintiffs' claims will be dispositive of the interests of class members who are not parties.

188.    <u>Common Conduct (FRCP 23(b)(2))</u>: Class certification is also appropriate because Defendant(s) has/have acted in the same or similar manner with respect to all class members thereby making injunctive and declaratory relief appropriate. Plaintiffs demand such relief as authorized by 47 U.S.C. §227.

189.    <u>Predominance and Superiority (FRCP 23(b)(3))</u>: Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

a. Proof of the claims of Plaintiffs will also prove the claims of the class without the need for separate or individualized proceedings;
b. Evidence regarding defenses or any exceptions to liability that Defendant(s) may assert and attempt to prove will come from business records and will not require individualized or separate inquiries or proceedings;

c. Defendant(s) has/have acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

d. The amount likely to be recovered by individual class members does not

support individual litigation;

e.  A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

f.  This case is inherently manageable as a class action in that:

(i)  Defendant(s) targeted persons to receive the fax transmissions and it is believed that Defendant purchased a list of advertising leads from a third-party;

(ii)  business records from Defendant(s) will readily identify class members and establish liability and damages;

(iii)  business(s) records from one or more third-parties will readily identify class members and establish liability and damages;

(ii)  Liability and damages can be established for the Plaintiffs and the class with the same common proofs;

(iii)  Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

(iv)  A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort and expense;

(v)  A class action will contribute to uniformity of decisions concerning the actions taken by Defendant; and

(vi)  As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

WHEREFORE, Plaintiffs, CHRIS NIKOLOVSKI and CHRIS NIKOLOVSKI D.D.S, P.C., individually and on behalf of all others similarly situated, demand judgment in its favor and against Defendants PRIME CAPITAL SOURCE, INC. and SCOTT DAVIDSON as follows:

a.  That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint one or both of the Plaintiffs as the representatives of the class, and appoint their counsel as counsel for the class;

b. That the Court award actual monetary loss from the above violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater;

c. That the Court award treble damages of $1,500.00 if the violations are deemed "willful or knowing";

d. That Court enjoin Defendant(s) from additional violations of the TCPA; and;

e. That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

**Plaintiffs hereby demand a jury trial.**

Respectfully submitted,

CHRIS NIKOLOVSKI and CHRIS NIKOLOVSKI D.D.S, P.C., individually, and as the representatives of a class of similarly situated persons

/s/ James C. Vlahakis

James C. Vlahakis
Omar T. Sulaiman
Alexander Taylor
Sulaiman Law Group, Ltd
2500 South Highland Avenue #200
Lombard, IL 60148
Phone: (630) 581-5456
jvlahakis@sulaimanlaw.com
osulaiman@sulaimanlaw.com
ataylor@sulaimanlaw.com